IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAWNA SULLINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-307-STE |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

**I.     PROCEDURAL BACKGROUND**

On September 26, 2017, Ms. Sullins protectively filed for disability insurance benefits alleging a disability beginning February 1, 2015. (TR. 12).[1] Initially and on reconsideration,

---
[1] Ms. Sullins' date last insured was December 31, 2020.

the Social Security Administration (SSA) denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision on June 14, 2019. (TR. 12-20). The Appeals Council denied Plaintiff's request for review (TR. 1-5), making the ALJ's decision the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Ms. Sullins had not engaged in substantial gainful activity as defined in the regulations since her alleged onset date. (TR. 14). At step two, the ALJ determined Ms. Sullins had severe impairments consisting of depressive disorder, anxiety disorder and PTSD. (TR. 14).

At step three, the ALJ considered whether Ms. Sullins' impairments were severe enough to meet the requirements of any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). (TR. 15). The ALJ considered the Listings 12.04 (depressive disorders), 12.06 (anxiety and related disorders) and 12.15 (PTSD) and determined the medical evidence of record did not demonstrate that Plaintiff's severe impairments met or equaled a listing. (TR. 15-16).

At the first phase of step four, the ALJ determined Ms. Sullins' residual functional capacity (RFC):

> [T]he undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to performing simple, routine, and repetitive tasks in a low stress work environment, may occasionally be required to make decisions, may occasionally have changes in the work

setting. She may have no interaction with the public and may have occasional interaction with co-workers and supervisors.

(TR. 16).

At the second phase of step four, the ALJ concluded that Plaintiff had no past relevant work. (TR. 19).[2] But based on the testimony of the vocational expert (VE), the ALJ determined there were other jobs existing in sufficient numbers in the national economy that Ms. Sullins could perform. (TR. 19-20). Given the limitations identified by the ALJ in a series of hypothetical questions, the VE identified three medium, unskilled jobs from the Dictionary of Occupational Titles that a hypothetical person with Plaintiff's impairments could perform: laundry worker, industrial cleaner and packager. (TR. 20). At step five, the ALJ found the VE's testimony to be consistent with the information in the Dictionary of Occupational Titles and adopted the VE's testimony, concluding Plaintiff was not disabled during the relevant time period, based on her ability to perform the identified jobs. (TR. 20).

### III.   ISSUES PRESENTED

Ms. Sullins contends the ALJ erred by failing to properly consider all of her impairments at step two of the sequential evaluation process; by failing to perform a proper evaluation at step five; and by failing to properly evaluate the consistency of her testimony and the medical records.

---

[2] The vocational expert, however, testified that Ms. Sullins has past relevant work as a salad maker and home health aide. (TR. 373). There is no ready explanation for the ALJ's determination that Ms. Sullins had no past relevant work.

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.   ANALYSIS

### A.   Step Two

Ms. Sullins contends the ALJ erred at step two of the sequential evaluation process by failing to consider whether her hypertension and primary insomnia were severe or nonsevere conditions. She argues that because she was diagnosed with these medical conditions, it was incumbent on the ALJ to identify them at step two and to consider them in combination with her mental impairments through all steps of the sequential evaluation.

But in this case, none of the medical evidence supports any identifiable limitations caused by either of these impairments, much less limitations that would make either condition a "severe" limitation—that is, one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). What is more, a claimant must make only a *de minimis* showing to advance beyond step two. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir.2004). Thus, a claimant need establish, and an ALJ need find, only one severe impairment. *See Oldham v. Astrue*, 509 F.3d 1254, 1256–57 (10th Cir.2007) (noting that, for step two, the ALJ explicitly found that the claimant "suffered from severe impairments," which "was all the ALJ was required to do"). The reason is grounded in the Commissioner's regulation describing step two, which states: "If you do not have a severe medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . ., we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii) (emphasis added). By its plain terms, the regulation requires a claimant to show only "*a* severe" impairment—that is, *one* severe impairment—to avoid a denial of benefits at step two. *Id.* (emphasis added). As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step.

Thus, the failure to identify a particular impairment at step two is not reversible error where the ALJ finds at least one severe impairment and proceeds past step two. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). And common sense dictates that when a medical condition causes no significant limitations, there are no limitations to consider in combination with impairments caused by severe impairments at the remaining steps of the sequential evaluation.

5

### B. Step Five

Ms. Sullins contends the ALJ erred at step five by finding she could perform jobs that were allegedly inconsistent with the RFC he had formulated at step four. Specifically, Plaintiff contends the jobs identified by the VE, all of which require a reasoning level of 2, were beyond her ability. Plaintiff bases this argument on the ALJ's step-three findings.

As required by the regulations, the ALJ considered whether Ms. Sullins' mental impairments met or equaled any listed impairment at 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ's analysis followed the process for evaluating mental impairments, and the categories of such impairments, as prescribed by the Commissioner's regulations. These include the so-called "paragraph B" and "paragraph C" criteria for describing adult mental disorders. *See generally* 20 C.F.R. §§ 404.1520a(c)–(d); *see also* Social Security Ruling 96-8P, 1996 WL 374184, at *4 (July 2, 1996). The regulations identify four functional areas in which the ALJ will rate the degree of a claimant's functional limitations, including: (1) the ability to understand, remember or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The criteria are not RFC findings, but rather a method of rating the severity of mental impairments at steps 2 and 3 of the sequential evaluation. *See Chrismon v. Colvin*, 531 Fed. App'x. 893, 897-898 (10th Cir. 2013) (discussing the difference between step three findings and RFC findings).

In determining that Ms. Sullins', mental impairments did not meet or equal any of the mental listings, the ALJ considered her mental impairments, finding she had mild limitations in understanding, remembering and applying information and mild limitations in adapting or

managing oneself. The ALJ found she had moderate limitations in interacting with others and moderate limitations in concentrating, persisting and maintaining pace. (TR. 15).

In assessing the Paragraph B criteria, the ALJ considered the evidence in the record including statements of Ms. Sullins' physicians, her own adult function reports, and her hearing testimony. Having reviewed the record, this Court finds the ALJ's paragraph B findings are supported by substantial evidence.

Moreover, the ALJ's RFC determination took into account the paragraph B findings by limiting her to jobs requiring only simple, routine and repetitive tasks that only occasionally require decision making and do not require interaction with the public and only occasional interaction with co-workers and supervisors.

But Plaintiff contends the jobs requiring level 2 reasoning, as defined in the Dictionary of Occupational Titles, are inconsistent with the ALJ's RFC. The Dictionary of Occupational Titles (DOT) defines six levels of reasoning development. Level 2 reasoning level requires the ability to:

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

DOT Appendix C - Components of the Definition Trailer, (1991 WL 688702).

The Tenth Circuit has stated that an RFC limitation to "simple and routine" work tasks "seems inconsistent with the demands of *level-three reasoning*."[3] *Hackett v. Barnhart*, 395

---

[3] Jobs with Level 3 Reasoning require a worker to "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations."

Appendix C - Components of the Definition Trailer, (1991 WL 688702).

7

F.3d 1168, 1176 (10th Cir. 2005). The Tenth Circuit in *Hackett* noted that this RFC limitation appeared more consistent with level-two reasoning, which requires the worker to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations." *Id.* (quoting DOT, App'x C, § III) (quotation marks and alterations omitted); *see also Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (same). The Court finds no reversible error in the ALJ's step-five findings.

### C. Consistency of Testimony with Medical Evidence

Ms. Sullins contends the ALJ erred in his determination that her testimony and adult function reports were not entirely consistent with the medical evidence. (ECF No. 23:13-14).

The assessment of subjective symptoms evidence is a two-step process, requiring the ALJ to first determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his alleged symptoms. *See* Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016). If so, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which her symptoms limit her ability to perform work-related activities. *See id.* at *4. In doing so, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*; *see also id.* at *4-7 (elaborating on factors to consider); 20 C.F.R. § 404.1529(c) (same).

8

An ALJ's subjective symptom evaluations "warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). Still, such "deference is not an absolute rule." *See Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (unpublished) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)). In evaluating a claimant's subjective symptom evidence and other matters, an ALJ must discuss not only "the evidence supporting his decision," but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Along these lines, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted). Likewise, an ALJ is not permitted to "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)). Failure to follow these controlling legal standards is grounds for remand. *See, e.g., Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

Here, the ALJ used the two-step process in considering Plaintiff's symptoms and their consistency with the medical record. (TR. 16-17). First, the ALJ determined Plaintiff had medically determinable mental impairments including depression, anxiety and PTSD that could reasonably be expected to cause Plaintiff's alleged symptoms. (TR. 17). The ALJ then considered whether the limiting effects of those symptoms, as described by Plaintiff, were consistent with the medical evidence. (TR. 17-19).

9

The ALJ found the extreme and marked limitations assessed by Dr. Collins, Ms. Sullins' physician, to be unpersuasive because they were generally inconsistent with his treatment notes. (TR. 18-19). Dr. Collins completed a check list Mental Capacity Assessment that indicated extreme or marked limitations in every aspect of her ability to sustain concentration and persistence, in every aspect of social interaction and in every aspect of adaptation. (TR. 348-349). According to the form, a "marked limitation" indicates the individual has limitations in function during 2/3 of an eight hour workday. An "extreme limitation" indicates no useful ability to function in the area. And yet, Dr. Collins determined Ms. Sullins could manage her own benefits, should they be awarded. (TR. 349).

The ALJ explained he found Dr. Collins' opinion unpersuasive because it was inconsistent with his treatment records (TR. 18). "For example, the claimant rarely scored above 10 on the PHQ-9 [4] test, suggesting moderate depression at most." (TR 18).[5] The ALJ also noted that Ms. Sullins was able to answer questions appropriately during the administrative hearing. (TR. 15).

---

[4] The PHQ-9 "is one of the most validated tools in mental health and can be a powerful tool to assist clinicians with diagnosing depression and monitoring treatment response. The nine items of the PHQ-9 are based directly on the nine diagnostic criteria for major depressive disorder in the DSM-IV." AIMS CENTER, *Advancing Integrated Mental Health Solutions, PHQ-9 Depression Scale*, (available at https://aims.uw.edu/resource-library/phq-9-depression-scale (last visited May 10, 2021). The PHQ-9 may be used "as a screening tool, an aid in diagnosis, and as a symptom tracking tool that can help track a patient's overall depression severity as well as track the improvement of specific symptoms with treatment." *Id.*

[5] *See* Kurt Kroenke, M.D., et al., *The PHQ-9: Validity of a Brief Depression Severity Measure, J. Gen. Intern. Med.* 16, 606-613, Table 2 (2001), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268/ (last visited May 10, 2021) (stating that a PHQ-9 score of 10-14 indicates a level of depression severity of "Moderate").

The ALJ found the opinions of State psychological consultants to be persuasive. Dr. Sally Varhese, M.D., found Ms. Sullins could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could not relate to the general public, but could adapt to a work situation. (TR. 35). The ALJ rejected the marked limitations found—ability to interact with the public and ability to understand, remember and carry out detailed instructions—finding Plaintiff to be moderately limited in these areas. (TR. 34). In all other respects, the ALJ found the opinions to be consistent with the evidence of record. (TR. 18).

The ALJ properly assessed the consistency between Ms. Sullins' reported symptoms and the medical evidence of record. Thus, reversal is not warranted.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on May 27, 2021.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE